v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 49A05–0410–JV–541.

Court of Appeals of Indiana.

June 30, 2005.

---

Danielle L. Gregory, Marion County Public Defender, Indianapolis, for Appellant.

Stephen R. Carter, Attorney General of Indiana, Maureen Ann Bartolo, Deputy Attorney General, Indianapolis, for Appellee.

**OPINION**

RATLIFF, Senior J.

## STATEMENT OF THE CASE

Defendant/Appellant D.S. appeals the disposition by the Marion County Superior Court, Juvenile Division 2 after he admitted to driving without a license, a Class C misdemeanor when committed by an adult.

We affirm.

## ISSUES [1]

D.S. raises two issues for our review, which we restate as:

I. Whether the juvenile court erred when it did not give D.S. credit against his sentence for the time he spent in pretrial electronic detention.

II. Whether the juvenile court erred in committing D.S. to the Department of Correction for a recommended period of six months.

## FACTS AND PROCEDURAL HISTORY

D.S., who was born on October 28, 1986, was arrested for possession of marijuana or hash, a Class A misdemeanor when committed by an adult, and operating a vehicle without a license, a Class C misdemeanor when committed by an adult. The arrest occurred on July 12, 2004, and an initial hearing was held on the same day addressing a petition alleging that D.S. had violated probation and suspended com-

mitment by committing the charged delinquent acts. The juvenile court ordered that D.S. be detained at the Marion County Juvenile Detention Center because he tested positive for marijuana and cocaine.

On July 26, 2004, the juvenile court released D.S. to his grandmother pending his denial hearing set for August 3, 2004. As a condition of release, D.S. was placed on electronic surveillance.

D.S. subsequently admitted to the delinquent act of driving without a license, and the juvenile court accepted the terms of the plea agreement and entered a true finding of driving without a license. The juvenile court accepted the recommendation of the probation department and committed D.S. to the Department of Correction for a recommended term of six months. The juvenile court also awarded wardship to the Department of Correction for housing in any correctional facility for children until the age of twenty-one, unless sooner released by the Department of Correction. The juvenile court further ordered that D.S. continue his education and participate in a substance abuse program.

## DISCUSSION AND DECISION

### I. PRETRIAL CREDIT TIME

■ D.S. contends that the trial court erred in not giving him credit against his sentence for the two-week period he spent on electronic surveillance. D.S. cites *C.T.S. v. State*, 781 N.E.2d 1193 (Ind.Ct. App.2003), *trans. denied*, in support of his contention.

---

1. Although the State does not raise the issue, we note that there is some question whether this appeal is moot because D.S. has already served his commitment. Our courts "have long recognized that a case may be decided on its merits under an exception to the general rule when the case involves questions of 'great public interest.'" *R.A. v. State*, 770 N.E.2d 376, 378 (Ind.Ct.App.2002) (citation omitted). Issues that are likely to recur generally fall within the public interest exception. *Id.* These issues are likely to recur, and therefore, we will address the issues on the merits.

The issue of credit for pretrial detention in a juvenile case was recently addressed by this court in *J.D. v. State*, 826 N.E.2d 146 (Ind.Ct.App.2005). In that case, the appellant requested credit for the thirty-five days he was detained prior to sentencing, and the trial court denied the request. *Id.* at 147. We held that a juvenile court, unlike a trial court adjudicating an adult criminal matter, has no statutory authority to award time-served credit; therefore, the juvenile court did not abuse its discretion in denying J.D.'s request. *Id.*

We also addressed the question of whether *C.T.S.* entitled J.D. to time-served credit. Judge Mathias, who authored both *J.D.* and *C.T.S.*, held:

> In *C.T.S.* this court remanded C.T.S.'s indeterminate sentence to the trial court and ordered the trial court to give C.T.S. time-served credit. However, *C.T.S.* involved an extraordinary period of months awaiting disposition, more akin to the constitutional right of speedy trial. Accordingly, J.D. may not rely upon *C.T.S's* unusual remand order.

*Id.* (internal citation omitted).

■ We agree with and adopt the reasoning set forth in *J.D.* Furthermore, we note that even in adult criminal matters a trial court does not abuse its discretion in denying a request for credit for pretrial electronic detention. *See Molden v. State*, 750 N.E.2d 448, 451 (Ind.Ct.App.2001). As we stated in *Molden*, "time spent in pretrial home detention is not equivalent to pretrial time served in a prison or jail and pretrial home detainees are not entitled as a matter of law to receive credit for time served on home detention toward any eventual sentence." *Id.*

The juvenile court did not abuse its discretion in refusing to give D.S. credit for the time he spent on electronic detention.

## II. PROPRIETY OF SENTENCE

■ D.S. contends that the juvenile court abused its discretion when it granted wardship of D.S. to the Department of Correction and recommended a period of commitment of six months. D.S. argues that his commitment is punitive in nature and does not further the goal of rehabilitation. D.S. further argues that he should have been placed on intensive probation.

■ The choice of a specific disposition of a juvenile adjudicated a delinquent child is within the sound discretion of the juvenile court, subject to the statutory considerations of the welfare of the child, the community's safety, and the Indiana Code's policy of favoring the least harsh disposition. *C.T.S.*, 781 N.E.2d at 1202 (quoting *E.H. v. State*, 764 N.E.2d 681, 684 (Ind.Ct.App.2002), *trans. denied*). We will not reverse a juvenile disposition absent a showing of an abuse of discretion. *Id.* "An abuse of discretion occurs when the [juvenile] court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom." *Id.* (quoting *E.H., id.*).

■ The statutory scheme for dealing with juveniles who commit illegal acts is vastly different than the statutory scheme for sentencing adults who commit crimes. *Id.* "American society [has] rejected treating juvenile law violators no differently from adult criminals in favor of individualized diagnosis and treatment." *Id.* (quoting *State ex rel. Camden v. Gibson Circuit Court*, 640 N.E.2d 696, 697 (Ind.1994)). Indiana has a well-established policy of ensuring that "children within the juvenile justice system are treated as persons in need of care, protection, treatment, and rehabilitation." *Id.*

■ A juvenile court has wide latitude and great flexibility in dealing with juveniles; however, its goal is to rehabilitate rather than punish. *Id.* at 1203. Ind. Code § 31–37–18–6 provides a list of factors that the juvenile court must consider in entering a disposition decree. The statute provides that, if consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that (1) is in the least restrictive (most family like) and most appropriate setting available; (2) is close to the parents' home, consistent with the best interest and special needs of the child; (3) least interferes with family autonomy; (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

■ Although less harsh options than commitment to an institution are available for the juvenile court to utilize, "there are times when commitment to a suitable public institution is in the 'best interest' of the juvenile and of society." *S.C. v. State,* 779 N.E.2d 937, 940 (Ind.Ct.App.2002), *trans. denied* (quoting *A.D. v. State,* 736 N.E.2d 1274, 1278 (Ind.Ct.App.2000)). Stated differently, the law requires only that the disposition selected be the least restrictive disposition that is "consistent with the safety of the community and the best interest of the child." *See* Ind.Code § 31–37–18–6.

In the present case, the juvenile court's dispositional order stated as its bases for disposition that (1) D.S. has a prior history of delinquent activity and true findings; (2) previous dispositional alternatives had been exercised (docket fee, probation, probation fees, placement in the home, community service, and suspended commitment to Department of Correction); and

(3) D.S. was in need of care, treatment, rehabilitation, or placement. Appellant's App. at 8–9. It is clear from the transcript of the disposition hearing that after reviewing the ineffectiveness of probation violations and failed efforts with diversion and formal probation programs that the juvenile court utilized over approximately five and one half years, the court determined that anything less than commitment with the Department of Correction would not be in D.S.'s best interest. In March of 1997, D.S. was charged with disorderly conduct, a Class B misdemeanor if committed by an adult, and battery, a Class A misdemeanor if committed by an adult. D.S. agreed to enter a diversion program which he failed in July of 1997. Consequently, the charges were found true in February of 1999, and D.S. was placed on formal probation. D.S. appeared in juvenile court in January of 2000 and March of 2001, having violated the terms of formal probation in both instances. In November of 2001 and May of 2002, D.S. again violated the terms of his suspended commitment. Within the year, D.S. committed the instant offense of driving without a license. When he was brought to the juvenile justice center, he tested positive for cocaine and marijuana. D.S.'s experiences caused the juvenile court judge to conclude:

At this point [D.S.] you have been on Probation for nearly five and a half years. You've continued to have violations; you've continued to use drugs. In fact by your own statements you were going to test positive for use of drugs while you were on an electronic monitor pending this dispositional hearing. This court's offered placements, you've gotten virtually every service available this Court could offer you, and you continue to not follow through with the rules. At this point I will except [sic] Probation's recommendations and

find that, after five and a half years if you have not decided to do the right thing, I have no inclination [sic] that you're going to do it now.

(Tr. at 16).

In light of D.S.'s failure to respond to the numerous less restrictive alternatives already afforded to him, we cannot say that the juvenile court abused its discretion in committing him to the Department of Correction. This is especially true given the fact that trial counsel acknowledged during D.S.'s hearing that intensive probation would not be appropriate due to D.S.'s turning eighteen within two months of the hearing. (Tr. at 15).

## CONCLUSION

The juvenile court did not abuse its discretion in refusing to give credit-time for pretrial electronic detention or in committing D.S. to the Department of Correction for a recommended sentence of six months.

Affirmed.

MAY, J., and BAILEY, J., concur.