## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 20 2018, 9:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Nancy A. McCaslin
McCaslin & McCaslin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| T.G.,<br>*Appellant-Respondent,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Petitioner* | December 20, 2018<br><br>Court of Appeals Case No.<br>18A-JV-1611<br><br>Appeal from the Elkhart Circuit<br>Court<br><br>The Honorable Michael A.<br>Christofeno, Judge<br><br>The Honorable Deborah Domine,<br>Magistrate<br><br>Trial Court Cause No.<br>20C01-1704-JD-154 |

**Vaidik, Chief Judge.**

# Case Summary

[1] T.G. appeals the juvenile court's order committing him to the custody of the Indiana Department of Correction (DOC) following a violation of probation. We affirm.

# Facts and Procedural History

[2] In April 2017, T.G. was adjudicated a delinquent for one count of criminal trespass, a Class A misdemeanor if committed by an adult, and two counts of disorderly conduct, each a Class B misdemeanor if committed by an adult. T.G. was placed on probation and sent to Elkhart County's juvenile-detention center while the juvenile probation department investigated residential-treatment options. While at the juvenile-detention center, T.G. was hospitalized three times for high blood pressure. T.G. was previously diagnosed with a blood-pressure issue that was controlled by medication. After the hospital adjusted his medication, T.G. returned to the juvenile-detention center.

[3] At a status hearing in May, T.G.'s probation officer reported that he had sent multiple requests seeking placement for T.G. in a residential-treatment facility, and that T.G. had been accepted by Rite of Passage. Concerned about T.G.'s recent hospitalizations, the juvenile court ordered that the juvenile probation department fully disclose T.G.'s medical condition to Rite of Passage before it would place him in that facility. After reviewing T.G.'s medical records, Rite

of Passage declined to accept T.G. T.G.'s probation officer then reached out to at least seven other residential facilities for possible placement, but they all declined to accept T.G. *See* Tr. pp. 27-28. However, he was able to find a spot for T.G. in Choices, an in-home intensive-services program, and recommended that T.G. be released to his mother and ordered to participate in Choices. The juvenile court ordered that T.G. be released from the juvenile-detention center and participate in Choices. Seeing that T.G. had a low number of school credits, the court also ordered that T.G. attend the second session of summer school. *See* Appellant's App. Vol. II pp. 57-58.

[4]     At a status hearing in September, T.G.'s probation officer petitioned the juvenile court for a modification of disposition, stating that T.G. violated his probation by being expelled from summer school for "bringing alcohol on to the school bus and then passing it around to other students[.]" Tr. p. 33. He also reported that T.G. had "at least four absences and four tardies" since the beginning of the school year and "was not following the rules at home." *Id.* at 34. The juvenile probation department recommended that T.G. be found in violation of probation and placed on GPS monitoring. The State argued that T.G. should be placed in the DOC to get his behavior "under control." *Id.* at 41. The juvenile court found that T.G. had violated his probation and ordered that he be placed on GPS monitoring.

[5]     Less than two weeks later, the juvenile court held another status hearing because T.G. had violated his probation by leaving home without permission and removing his GPS monitor. T.G.'s probation officer also reported that

T.G. had been suspended from school for a week for trying to fight a peer. He stated that the juvenile probation department had been dealing with T.G. "for five years" and recommended that T.G. be considered a candidate for the DOC because T.G. is "high risk" and "a danger to himself because he's not taking his medicine." *Id.* at 55. The court ordered a continuation of its existing orders and placed T.G. back on GPS monitoring. Ten days later, the juvenile court held another status hearing because T.G. had, once again, violated his probation by removing his GPS monitor. Against the recommendation of the juvenile probation department, the court ordered that T.G. be placed back on GPS monitoring. The juvenile court told T.G. that it was "going to give [him] one more chance." *Id.* at 71. At a status hearing in October, T.G. had made "positive progress" and the juvenile court ordered a continuation of its existing orders. *Id.* at 73.

[6] In February 2018, T.G. was hospitalized for blood-pressure issues. The juvenile court held a status hearing as scheduled and heard from the juvenile probation department regarding T.G.'s progress. T.G.'s probation officer reported that T.G. had tested positive for marijuana twice since September 2017 and that in January 2018 he "had a major blow up at school[.]" *Id.* at 81. After a verbal altercation with another student, T.G. was placed in a classroom when he began "throwing furniture, kicking furniture, punching walls, throwing things off desks." *Id.* The juvenile probation department recommended a continuation of the existing orders so that T.G. remained on GPS monitoring. The court agreed and continued its existing orders. At a status hearing in early

April, T.G.'s mother reported that he was missing. She told the court that "on Easter, he came in the house" but then he "disappeared." *Id.* at 87. The juvenile court stated that it hoped T.G. was "okay since he does have health issues." *Id.* T.G. was found on April 13.

[7] After T.G. was located, the juvenile probation department petitioned for a modification of disposition. In May, the juvenile court held the dispositional hearing. T.G.'s probation officer reported that in March, T.G. had been arrested for driving a car without a license and was with an eighteen-year-old passenger, who was also arrested for possession of stolen items and possession of a loaded handgun without a license. *See id.* at 88. After T.G.'s mother picked him up from the police station, he left home without permission and was gone for more than a month. T.G.'s probation officer also stated that T.G. had not attended school or drug treatment and tested positive for marijuana. He reiterated that he previously attempted to place T.G. in a residential-treatment facility but at least seven different facilities had denied T.G. *See id.* at 90. He further emphasized that "[T.G.'s] been in our system for years" and has violated probation numerous times in prior cases. *Id.*; *see also* Appellant's App. Vol. II pp. 90-93. The juvenile probation department recommended that T.G. be found in violation of his probation and that the juvenile court make him a ward of the DOC.

[8] Following the dispositional hearing, the juvenile court ordered that T.G. be made a ward of the DOC. *See* Appellant's App. Vol. II p. 114. The court reasoned:

> [T]he Court finds [T.G.] admits he left home without permission and was gone for more than a month, he drove a car without a license, he has not attended school, not attended [therapy], tested positive for [m]arijuana and he has failed to actively engage in treatment and he was arrested with an eighteen year old who was in possession of a gun. Attempts have been made to place [T.G.] in a residential placement, but his health precludes placement. The [DOC] can address medical condition and [T.G.'s] behavioral needs.

*Id.* at 113.

[9] T.G. now appeals.

# Discussion and Decision

[10] T.G. contends that the juvenile court abused its discretion by making him a ward of the DOC. The goal of the juvenile process is rehabilitation rather than punishment. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). "Accordingly, juvenile courts have a variety of placement choices for juveniles who have delinquency problems, none of which are considered sentences." *Id.* Indiana Code section 31-37-18-6(1)(A) provides that "[i]f consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that . . . is . . . in the least restrictive (most family like) and most appropriate setting available." Although options less harsh than commitment to an institution are available for the juvenile court to use, "there are times when commitment to a suitable public institution is in the 'best interest' of the juvenile and of society." *D.S. v. State*, 829 N.E.2d 1081,

1085 (Ind. Ct. App. 2005) (quotation omitted). "Stated differently, the law requires only that the disposition selected be the least restrictive disposition that is 'consistent with the safety of the community and the best interest of the child.'" *Id.* (quoting Ind. Code § 31-37-18-6). The specific disposition of a delinquent child is within the juvenile court's discretion. *K.S. v. State*, 849 N.E.2d 538, 544 (Ind. 2006). We will reverse only for an abuse of discretion, namely a decision that is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions to be drawn therefrom. *Id.* T.G. argues that placement in the DOC was not in his best interests and that his behavior is not "a threat to the community." Appellant's Br. p. 14.

[11] First, T.G. challenges the juvenile court's best-interest determination by claiming that "[c]ommunity resources could have been better utilized to serve" his interests, i.e., his blood-pressure issues. *Id.* at 13. To support this claim, he appears to rely on the juvenile court's statement that "[a]ttempts have been made to place [T.G.] in a residential placement but [his] health condition precludes that placement[.]" *Id.* at 8. At the dispositional hearing, T.G.'s probation officer stated that since May 2013 he had attempted to address all T.G.'s issues within the community and previously contacted "at least seven" residential-treatment facilities who all declined to accept T.G. Tr. p. 90. The probation officer also stated that the DOC is capable of meeting T.G.'s medical needs. In his brief, T.G. does not acknowledge the juvenile probation department's extensive efforts to keep him in the community, nor does he show

that DOC cannot meet his medical needs. As such, we find placement in the DOC was in T.G.'s best interests.

[12] Regarding the safety of the community, the record shows that T.G. repeatedly violated his probation when he passed out alcohol to other children on a school bus; got so upset at school that he ended up "throwing furniture, kicking furniture, punching walls, throwing things off desks," *id.* at 81; used marijuana; and drove a car without a license with an eighteen-year-old passenger who had a loaded handgun. *See id.* at 88.

[13] Furthermore, T.G. has an extensive history of delinquent activity—he has been involved with the juvenile probation department for multiple cases, spanning over five years. *See* Appellant's App. Vol. II pp. 90-93. During this time, T.G. has been offered countless rehabilitative services, including: formal and informal probation, residential placement at Rite of Passage, the Elkhart County Juvenile Detention Center, drug and alcohol education programs, GPS monitoring, medication management, and in-home intensive services through Choices. But T.G. has not responded to treatment and has exhausted the juvenile court's resources. The only viable option was for T.G. to be made a ward of the DOC. Accordingly, we affirm the juvenile court.

[14] Affirmed.

Mathias, J., and Crone, J., concur.