## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**ATTORNEY FOR APPELLANT**

R. Patrick Magrath
Madison, Indiana

**ATTORNEYS FOR APPELLEE**

Curtis T. Hill, Jr.
Attorney General of Indiana

Courtney Staton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| N.T.D., A Child Alleged to Be a Delinquent,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | February 19, 2020<br><br>Court of Appeals Case No.<br>19A-JV-1971<br><br>Appeal from the Jennings Circuit Court<br><br>The Honorable Jon W. Webster, Judge<br><br>Trial Court Cause No.<br>40C01-1809-JD-6 |

**Tavitas, Judge.**

## Case Summary

N.D. appeals from the juvenile court's modification of its dispositional order to order N.D. to be committed to the Department of Correction ("DOC") for housing in the Indiana Boys School. We affirm.

## Issue

The sole issue on appeal is whether the juvenile court abused its discretion when it committed N.D. to the DOC.

## Facts

On August 20, 2018, while N.D. resided in the Jackson County Juvenile Residence ("group home"), N.D. damaged the group home's property.[1] N.D.'s offense would constitute criminal mischief, a Class A misdemeanor, if committed by an adult. On August 23, 2018, the State filed a petition alleging that N.D. was a juvenile delinquent. On August 28, 2018, N.D. admitted the allegation.

Jennings County accepted the matter for disposition in October 2018. The juvenile court conducted a dispositional hearing on January 3, 2019, and N.D. was adjudicated a juvenile delinquent. The next day, the juvenile court approved an agreement wherein N.D. would be placed on supervised probation

---

[1] The Jennings County Department of Child Services placed N.D. in the Jackson County group home.

for twelve months, with a suspended commitment to the DOC. N.D was allowed to return to the group home.

[5] On February 9, 2019, during an altercation with a fellow group home resident, N.D. drew a knife and used an electronic-arc lighter to tase the resident. These acts, which would constitute attempted battery with a deadly weapon, if committed by an adult, violated the group home's rules and the terms of N.D.'s probation.

[6] The probation department filed a modification report on February 15, 2019, wherein it alleged that N.D. violated his probation. The modification report provides: "It is unsafe for [N.D.] to remain in the juvenile home"; "[h]e escalated negative behavior while in placement . . . ."; "[h]e has been in treatment, foster homes, and in the group home. He has had unsuccessful counseling for years"; "[p]lacement is failing"; "[h]e is putting other childrens [sic] safety at risk"; and "[h]e should be sentenced to Indiana Boys School." Appellant's App. Vol. II pp. 81-82.

[7] On April 10, 2019, the juvenile court conducted a hearing on the request for modification of the dispositional order. On April 15, 2019, the juvenile court approved a new agreement that extended N.D.'s probation for an additional year and placed N.D. in Lutherwood, a secure residential facility "for an indeterminate period[.]" Tr. Vol. II p. 12.

[8] N.D. was subsequently involved in the following incidents at Lutherwood. On April 25, 2019, N.D. stomped on a fellow resident's foot and caused injury. On

May 27, 2019, N.D. punched a fellow resident's eye. On June 2, 2019, N.D. broke a shelf while he tried to lock out group home staff; N.D. also stole and snorted a fellow resident's medication. On June 4, 2019, the probation department, again, filed a petition to modify the dispositional order for the foregoing offenses, which would be battery, criminal mischief, and theft, if committed by an adult.

[9] The probation department's second modification report provided: "[N.D.] is in a long term DCS placement and is not taking treatment seriouosly [sic]. He continues to have delinquent behavior"; [h]e shows very little effort at changing his behavior"; [h]e has violated probation by numerous issue[s] while in treatment"; [i]t is unsafe for him to remain in the juvenile home; and [h]e should be sentenced to Indiana Boys School."[2] Appellant's App. Vol. II pp. 101-102. DCS contributed the following to the modification report: "DCS needs help with this child that is unavailable except in a correctional setting." *Id.* at 103.

[10] On July 24, 2019, the juvenile court conducted a hearing on the second request for modification of the dispositional order. N.D. admitted to the allegations of property damage and substance use. Family case manager ("FCM") Stacey Lane of DCS testified that the first modification occurred when N.D. "had

---

[2] As in the first modification report, the probation department stated that the placement was "failing" and that N.D. "put[s] other childrens [sic] safety at risk." Appellant's App. Vol. II p. 103.

issues . . . in a less restrictive placement at the [group] home." *Id*. at 17. As FCM Lane testified:

> . . . [W]e had found a placement with Lutherwood after the first revocation [ ] due to the behaviors and the concern for [N.D.'s] safety and [the] safety of others. [W]hile he's been at Lutherwood there have been several incident reports and the latest that I had received was on June 26th [ ]where he and a peer had locked himself into his room, [ ] jammed wood pieces in the door, and then started banging on a window. They broke the glass out of the window and bang-blanging (sic) [ ] on the plexiglass of the window to break it out, um, in an elopement attempt. [T]hose are behaviors that are concerning to [DCS] [ ] in that he was placed at Lutherwood [ ] due to his concerns in a lesser restrictive placement.

Tr. Vol. II p. 17.

Jennings County probation officer Andrew Judd testified: "[W]e asked for the [first] modification [ ] because the [group] home wasn't the appropriate placement and Lutherwood was found to be the best alternative at that time." *Id*. at 22. Judd testified further that, "There'[ve] been several incidents [ ] at Lutherwood of aggressive behavior . . . ." *Id*. at 23. Judd also testified:

> . . . [A] lot of us are pretty compassionate when it comes to [N.D.], . . . however [N.D.'s] behavior has continued to decline, he's continued to have criminal activity while he's in placement. His most recent activity, though it's not part of this allegation is an escape attempt from that locked facility [ ] which was just the end of last month, [ ] and I am concerned with what [N.D.] might do if he did get out and escape from that facility . . . . [ ] I think [N.D.'s] in a bad position, however, his criminal behavior

> is continuing to evolve, and so I think the Indiana Boy[s] School
> is possibly the best place for him.

*Id*. at 23.  Judd also testified that the Indiana Boys School is equipped to provide psychological and psychiatric support that is comparable to the treatment N.D. received at Lutherwood.

[12]  At the close of the evidence, the juvenile court "award[ed] wardship of [N.D] to the [DOC] for housing in the Indiana Boys School, or any correctional facility for children determined appropriate . . . ."  Appellant's App. Vol. II p. 111.  N.D. now appeals.

## Analysis

[13]  N.D. argues that the juvenile court abused its discretion in ordering him committed to the DOC.  A juvenile court is accorded "wide latitude" and "great flexibility" in its dealings with juveniles.  *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008).  "[T]he choice of a specific disposition of a juvenile adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion."  *Id.*  The juvenile court's discretion in determining a disposition is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least-harsh disposition.  *Id.*  An abuse of discretion occurs when the juvenile court's action is "clearly erroneous" and against the logic and effect of the facts and circumstances before it.  *Id*.

[14] The goal of the juvenile process is rehabilitation, not punishment. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010). "Accordingly, juvenile courts have a variety of placement options for juveniles with delinquency problems, none of which are considered sentences." *Id.* Indiana Code Section 31-37-18-6(1)(A) provides that: "[i]f consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that is in the least restrictive (most family like) and most appropriate setting available." "[T]he statute contains language that reveals that a more restrictive placement might be appropriate under certain circumstances." *J.S.*, 881 N.E.2d at 29. The law requires only that the disposition selected be the least restrictive disposition that is "consistent with the safety of the community and the best interest of the child." *D.S. v. State*, 829 N.E.2d 1081, 1085 (Ind. Ct. App. 2005).

[15] Given N.D.'s continued criminal activity and violations of the terms of his supervised probation in less-restrictive placements, we cannot say that the juvenile court abused its discretion here. The record reveals that attempts by the juvenile court, probation officials, and DCS to place N.D. in less-restrictive placements failed to rehabilitate N.D. Probation officer Judd and FCM Lane each testified that N.D.'s bad behavior only escalated in less-restrictive placements and recommended that N.D. be placed in the DOC; the juvenile court acquiesced. N.D.'s case appears to be one in which a more restrictive placement is appropriate. *See J.S.*, 881 N.E.2d at 29. The juvenile court did not abuse its discretion when it ordered N.D. to be committed to the DOC for housing in the Indiana Boys School.

# Conclusion

[16] The juvenile court did not abuse its discretion when it ordered N.D. to be committed to the DOC. We affirm.

[17] Affirmed.

Najam, J., and Vaidik, J., concur.