## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 31 2020, 9:00 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark K. Leeman
Leeman Law Office and
Cass County Public Defender
Logansport, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Caroline G. Templeton
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

B.M.,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff,*

August 31, 2020

Court of Appeals Case No.
20A-JV-335

Appeal from the Cass Circuit Court

The Honorable Stephen R. Kitts, II, Judge

Trial Court Cause No.
09C01-1911-JD-85

**Robb, Judge.**

# Case Summary and Issue

[1] The juvenile court adjudicated B.M. a delinquent child for acts that, if committed by an adult, would constitute criminal mischief, a Class B misdemeanor, and awarded wardship of him to the Indiana Department of Correction ("DOC"). B.M. appeals, raising one issue for our review which we revise and restate as whether the juvenile court erred by failing to find that B.M. was a dual status child and refer him to a dual status assessment team to be evaluated prior to disposition. Concluding the juvenile court did err, we reverse and remand with instructions.

# Facts and Procedural History

[2] On November 13, 2019, the State filed a petition alleging B.M. was a delinquent child for acts that, if committed by an adult, would constitute the following offenses: Count 1, unlawful possession of a legend drug, a Level 6 felony; Count 2, possession of a controlled substance, a Class A misdemeanor; Count 3, criminal mischief, a Class B misdemeanor; Count 4, unlawful use of a police radio, a Class B misdemeanor; and Count 5, possession of marijuana, a Class B misdemeanor. *See* Appellant's Appendix, Volume II at 16-17. A fact-finding hearing was held on December 12 during which B.M. admitted to the allegations contained in Count 3 of the delinquency petition and the remaining counts were dismissed. *See id.* at 28. The juvenile court adjudicated B.M. a delinquent child for committing what would be criminal mischief if committed

by an adult, ordered the probation department to prepare a predispositional report, and scheduled a dispositional hearing.

[3] Five days before the dispositional hearing, probation filed its predispositional report detailing (among other things) B.M.'s extensive juvenile history, including numerous adjudications as a juvenile delinquent for what would be felony and misdemeanor offenses if committed by an adult. The report also indicated that B.M. had been the focus of six Department of Child Services ("DCS") assessments between 2005 and 2017. His mother had been identified as the main perpetrator in five of those assessments. Neglect or abuse allegations against his mother were substantiated in 2005 and 2014. DCS also substantiated allegations of abuse or neglect of B.M. by his father and step-mother in 2014. Ultimately, B.M. was adjudicated a CHINS on June 18, 2014. B.M.'s mother, father, and step-mother were ordered to participate in services and wardship of B.M. was awarded to DCS. *See id.* at 82-90. The CHINS case was closed on July 8, 2015.

[4] The dispositional hearing in B.M.'s juvenile delinquency case was held on January 15, 2020. At the conclusion thereof, the juvenile court awarded wardship of B.M. to the DOC and subsequently entered a written dispositional order that contained no findings about dual status. B.M. now appeals.

# Discussion and Decision

# I.  Standard of Review

The disposition of a juvenile adjudicated a delinquent is a matter committed to the sound discretion of the juvenile court, subject to the statutory considerations of the welfare of the child, the safety of the community, and the legislative policy favoring the least harsh disposition.  *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010).  We will not reverse a juvenile disposition absent a showing of an abuse of discretion, which occurs when the juvenile court's decision is clearly erroneous and against the logic and effect of the facts and circumstances before it.  *D.S. v. State*, 829 N.E.2d 1081, 1084 (Ind. Ct. App. 2005).

# II.  Dual Status Child

B.M. argues the juvenile court erred by "fail[ing] to identify [him] as a dual status child and follow the legal procedures necessary to protect his best interest [and] he may be in danger as a result."  Appellant's Brief at 14.  Specifically, he contends "[h]ad the judge made such a finding, [he] would have been reviewed by a dual status [assessment] team who would make recommendations based upon [his] history of living in an abusive family.  Because none of this occurred here, [he] may be dumped right back into a situation of abuse and neglect when he is released from the DOC."  *Id.* at 22.  We agree.

> Research has demonstrated that there is a greater likelihood of delinquency among children who have suffered abuse and neglect.  Indiana Code Article 31-41 was enacted in 2015 to address the specific needs of these children by providing both the child welfare system and the juvenile justice system tools to

identify, communicate and implement a coordinated plan that serves a child's best interests and welfare. Therefore, when a child enters either the child welfare system or the juvenile justice system, the court and responding agencies must determine whether a child is a dual status child and proceed accordingly.

*K.S. v. State*, 114 N.E.3d 849, 852 (Ind. Ct. App. 2018) (quotations omitted), *trans. denied*.

[7] Indiana Code chapter 31-37-13 describes the procedures for a factfinding hearing in a juvenile delinquency adjudication. Indiana Code section 31-37-13-2(a) requires the juvenile court, upon making a delinquency determination, to order a predispositional report, schedule a dispositional hearing, and complete a dual status screening tool on the child and determine whether the child is a "dual status child." The "dual status screening tool" is a "factual review of a child's status and history conducted by the case manager [in a CHINS proceeding] or the probation officer [in a delinquency proceeding]" used to determine whether a child meets the criteria for being a dual status child. Ind. Code § 31-41-1-3. As relevant here, a "dual status child" is a child who "has been previously adjudicated to be a [CHINS] . . . and who was under a wardship that had been terminated or was in a program of informal adjustment that had concluded before the current delinquency petition[.]" Ind. Code § 31-41-1-2(4). A dual status assessment team[1] is responsible for evaluating a dual

---

[1] "Dual status assessment team" is "a committee assembled and convened by a juvenile court to recommend the proper legal course for a dual status child." Ind. Code § 31-41-1-5.

status child's status, best interests, need for services, and level of needs, strengths, and risks. Ind. Code § 31-41-1-4. The dual status assessment team must meet, assess the child's best interests and well-being, and provide written recommendations to the trial court about how to proceed. Ind. Code §§ 31-41-2-3, -5, -6. And when the juvenile court issues its dispositional decree, it must be accompanied by written findings and conclusions, including a specific finding as to whether the child is a dual status child. Ind. Code § 31-37-18-9(a).

[8] Section 2(a) of the chapter concerning delinquency factfinding hearings requires the juvenile court to determine whether the child is a dual status child and section 2(b) provides that "[i]f a child is determined to be a dual status child, the court *may* refer the child for an assessment by a dual status assessment team[.]" Ind. Code § 31-37-13-2 (emphasis added). However, once the juvenile court determines that a child is a dual status child, Indiana Code Title 31-41 explicitly requires that the juvenile court refer the child to be assessed by a dual status assessment team. Ind. Code § 31-41-2-1 (stating that the juvenile court "*shall* refer the child to be assessed by a dual status assessment team" (emphasis added)). Therefore, the two statutes disagree as to whether a dual status referral is mandatory. We reiterate that the purpose of our dual status legislation is to address the specific needs of dual status children – those in both the child welfare system and juvenile system – by implementing a plan to serve their best interests and welfare. *K.S.,* 114 N.E.3d at 852. Although the delinquency statute says the juvenile court "may" refer the child, once a juvenile court finds a child to be a dual status child, we believe that the dual status assessment is

required. Interpreting the assessment as discretionary following a determination that a child is a dual status child, would be inconsistent with the purpose of the legislation.[2]

[9] Here, there is no evidence in the record that the juvenile court completed the dual status screening tool, found B.M. to be a dual status child, referred him to be assessed by a dual status assessment team, or that B.M. was evaluated by such team. B.M. contends he is a dual status child and the State does not challenge this assertion. Instead, the State argues that "B.M. is unable to establish that even if a dual status assessment team had been convened that the juvenile court's dispositional decree would have been altered. It was the juvenile court, not the dual status assessment team, who had the final decision in the manner in which the case proceeded." Brief of Appellee at 12 (citing Ind. Code § 31-41-3-1). Indeed, it is possible that a dual status assessment team's recommendation would not have affected the juvenile court's disposition in this case. However, we cannot definitively conclude so.

[10] "[T]he inability of [the juvenile justice and child welfare] systems to coordinate services for a blended approach often places a child on a trajectory that does not meet the child's needs and best interests." Dual Status Resource Notebook, Tab 3: Why Do We Need Dual Status Processes?,

---

[2] Remedying the inconsistencies between our juvenile delinquency and dual status statutes regarding whether the dual status assessment referral is mandatory is a task for our legislature. *See* 15A Ind. Prac., Family Law – Children In Need Of Services § 19:19 (pointing out "internal contradictions[,]" including whether the dual status referral is required, contained in various provisions of our CHINS and dual status statutes).

http://www.state.in.us/judiciary/probation/files/Dual%20Resourc e%20Notebook.pdf [https://perma.cc/WEM8-5WD9]. Therefore, given the important objective of our dual status legislation, we cannot conclude that the failure to refer B.M. to the dual status assessment team for evaluation was essentially harmless as the State contends.

[11]     We conclude there is sufficient evidence in the record to support a finding that B.M. is a dual status child pursuant to Indiana Code section 31-41-1-2(4). B.M. was previously adjudicated a CHINS in June 2014 and was under DCS' wardship until the CHINS case was closed in July 2015, all of which occurred before this delinquency petition was filed. *See* Appellant's App., Vol. II at 32, 39, 82-90. Because the juvenile court failed to find that B.M. is a dual status child and refer him to the dual status assessment team in violation of Indiana law, we reverse the juvenile court's dispositional order and remand with instructions for the juvenile court to enter an order finding B.M. to be a dual status child and referring him to be evaluated by the dual status assessment team and to then conduct further proceedings consistent with this opinion.

# Conclusion

[12]     We conclude the juvenile court abused its discretion when it failed to determine that B.M. is a dual status child and order that he be assessed by a dual status assessment team as required by Indiana Code section 31-41-2-1 before entering a dispositional order. Therefore, we reverse the juvenile court's dispositional order and remand with instructions for the juvenile court to enter an order

finding that B.M. is a dual status child and referring him to be assessed by a dual status assessment team.

[13] Reversed and remanded.

May, J., and Vaidik, J., concur.