## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 20 2020, 9:09 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Elizabeth A. Bellin
Elkhart, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| S.A.,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 20, 2020<br><br>Court of Appeals Case No.<br>20A-JV-283<br><br>Appeal from the Elkhart Circuit Court Juvenile Division<br><br>The Honorable Michael A. Christofeno, Judge<br><br>The Honorable Deborah Domine, Magistrate<br><br>Trial Court Cause No.<br>20C01-1802-JD-33 |

**Altice, Judge.**

## Case Summary

[1] S.A. suffers from serious aggression issues that in large part stem from past trauma, as well as an apparent lack of adequate support from his mother (Mother). He was adjudicated a delinquent child for the first time in May 2018, after having just turned thirteen. Since the instant adjudication, he has accumulated several additional delinquency adjudications while on probation and in a variety of placements. After being ejected from his second residential placement in December 2019 and then being involved in a serious fight at the juvenile detention center, the juvenile court modified S.A.'s placement and awarded guardianship to the Indiana Department of Correction (DOC). On appeal, S.A. contends that the juvenile court abused its discretion by placing him with the DOC.

[2] We affirm.

## Facts & Procedural History

[3] On May 28, 2018, at his initial hearing, S.A. admitted to being a delinquent child for having committed acts that would constitute the criminal offense of intimidation, a Class A misdemeanor, if committed by an adult. Specifically,

S.A. admitted that, on October 10, 2017, he threatened a peer at school that he had three knives in his bag and was not afraid to use them.[1]

[4] A representative from his then-current school testified that S.A. had been enrolled for five weeks and in that time had displayed "intense physical and verbal aggression, a lot of intimidation towards staff and students." *Transcript* at 11. He had already been suspended at least three times from the school "for some serious physical fighting." *Id.* Most recently, S.A. had held two pencils between his knuckles and held them to a student's neck, and he had threatened to stab another student.

[5] Mother testified that she knew her son needed help and had for some time. She requested intensive, inpatient treatment for him due to his ongoing behavior, which she feared might escalate and eventually result in his death or incarceration. S.A. had a history of past treatment and placements, which are not detailed in the record.

[6] At the dispositional hearing on June 20, 2018, the juvenile court adopted the recommendations of the probation department. Specifically, the court ordered individual and family therapy, six months of supervised probation, parent services for Mother, and immediate placement in Bashor Emergency Shelter Care (Bashor Shelter) for twenty days. The twenty-day hold at Bashor Shelter

---

[1] At this hearing, S.A. also admitted under another cause number that he committed acts on October 12, 2017, against Mother, that would constitute domestic battery if committed by an adult.

was intended to stabilize S.A. and start treatment before sending him back home with Mother.

[7] On July 9, 2018, S.A. was released to Mother's care with supportive family therapy. Mother expressed reservations about his return home but agreed to give it a try at the urging of the court and others.

[8] At a hearing on September 17, 2018, the juvenile court determined that S.A. had violated probation by being suspended from school three times and by being disruptive at home. The court ordered S.A. to attend Keys Academy on days that he was suspended from school and, in addition to therapy, receive case management services through Keys Counseling. Mother continued to request residential treatment for S.A., but the court noted S.A. was thirteen years old and services had only just begun and needed to be given a chance.

[9] On October 23, 2018, the juvenile court held a hearing regarding additional violations of probation. Carmen Macon, S.A.'s probation officer throughout this case, testified that the day after the last hearing, S.A. was involved in a fight and suspended from school for five days. Thereafter, police were called to the family's home. He was taken by police, on September 19, 2018, to a psychiatric hospital after he made suicidal threats and refused to go inside his home. He was placed on medication and released to Bashor Shelter a week later, where he remained at the time of the hearing. The trial court adopted Macon's recommendations, which included formal probation, a continued stay at Bashor Shelter, medical management, appointment of a CASA, and a parenting

assessment for Mother. In addition to foster placement, the trial court directed Macon to explore possible kinship placements. The court also warned Mother that she needed to stop being an obstacle to S.A.'s treatment.

[10] S.A.'s aggressive behaviors continued to escalate at Bashor Shelter, and he was brought before the juvenile court again on November 5, 2018. Macon reported that S.A. had punched and kicked a male staff member while being put in restraints and, the next day, threw a chair at a female peer and later charged at a staff member. Concerned for the safety of staff and peers, Macon testified that S.A. could no longer remain in Bashor Shelter and needed to be transferred to a secure facility, Bashor Children's Home in the Faith Unit (Faith Unit). The trial court found S.A. in violation of his probation and ordered him to be placed in the Faith Unit.

[11] After a few incidents in December 2018, S.A. did well in the Faith Unit and made significant progress for several months. Mother was also more actively participating during this time. At a hearing on May 15, 2019, Macon reported that S.A. had been approved to step down to the Geyer Cottage, which the court ordered. Other services, such as therapy, also continued to be ordered.

[12] In July 2019, S.A. began to have incidents requiring the use of restraints. Then, on August 19, 2019, he ran away with other peers from the Geyer Cottage and was recovered by local police three days later. S.A. admitted to using marijuana and having sexual intercourse multiple times with one of the other

runaways. He tested positive for marijuana upon his return. Thereafter, S.A. caused three separate fights at the Geyer Cottage.

[13] At a hearing on September 11, 2019, the juvenile court found S.A. in violation of his probation. The court also held an initial hearing for a new juvenile delinquency petition involving battery, which S.A. admitted.

[14] The State filed an additional delinquency petition against S.A. on October 10, 2019. This resulted from S.A. running away from Geyer Cottage again and, upon being apprehended by police, battering two officers and causing them bodily injury. Bashor would not take S.A. back, so he was sent to the juvenile detention center.

[15] At a hearing on October 11, Macon noted the extreme difficulty in finding another placement for S.A. given his erratic and violent behavior and his tendency to run away. When Macon recommended placement in the DOC, the court inquired: "My perception of community safety is we … should help a child get better, not worse, because community safety with a child is long term, long term vision. How are we going to help this child by placing him in the Indiana Department of Corrections?" *Id*. at 137. The court continued: "And is it fair to him to be placed in a penal facility when it's Mom not showing up that caused him to be in this position?" *Id*. at 138. Macon tearfully responded:

> I believe it may make him worse to be honest. I mean, he has no support, I'm sorry, and I worked with him for over a year and this is one of the hardest cases…. [H]e has no support, so, to send him to DOC is the only decision. I don't think Mom's going to

participate in anything. I'm scared. I just don't think he has the support right now.

*Id.* CASA, in turn, acknowledged the serious charges S.A. had accrued since his initial adjudication, but CASA could not recommend the DOC at the time, noting that S.A. might come out worse and that the DOC would prevent barriers to S.A. and Mother's reunification. Ultimately, the court ordered S.A. to stay in the juvenile detention center, with continued individual and family therapy, while Macon made additional attempts to find another residential placement for him.

[16] On October 29, 2019, S.A. was placed at Rite of Passage (ROP), a residential treatment facility for youth. Mother did not participate in S.A.'s treatment, and she did not visit him during this placement. On December 2, 2019, S.A. was removed from ROP and placed in the juvenile detention center after spitting at and assaulting ROP staff members. The following week, S.A. admitted to new juvenile delinquency allegations based on battery by bodily waste and was then returned to ROP on a zero-tolerance policy, which he quickly violated. On December 12, 2019, ROP requested S.A.'s removal from the program.

[17] At a hearing on December 19, 2019, the juvenile court found S.A. in violation of probation and ordered him placed in the juvenile detention center while the probation department developed further recommendations.[2] S.A.'s therapist

---

[2] Mother did not appear at this hearing, and the court issued a body attachment for her. On January 7, 2020, the court found her in contempt for failing to participate in S.A.'s treatment at ROP. The court noted

from ROP opined that due to his serious behavioral issues and therapeutic needs, S.A. required placement in a more secure facility such as the DOC.

[18] On January 6, 2020, while still detained in the juvenile detention center, S.A. "threw the first punch" in a fight with another juvenile. *Id.* at 188. The ensuing fight endangered other juveniles and staff and, according to the director of the center, "it was the worst she'[d] seen in 30 years[.]" *Id.* at 191.

[19] A hearing followed on January 8, 2020, to address S.A.'s placement. Based on S.A.'s long history in this case of failed placements and his "extremely worrisome" physical aggression, Macon recommended placement with the DOC to allow him to continue treatment in a secure setting. *Id.* at 188. Macon detailed the programs that would be available to treat S.A. through the DOC. CASA did not object to S.A. being made a ward of the DOC. Further, when the court asked S.A. if there was any reason he should not be placed in the DOC, S.A. responded, "To be honest, no." *Id.* at 193. Similarly, S.A.'s counsel stated, "This has been really tough, but [S.A.] himself said probably that's where he needs to be at this point. Nothing more." *Id.* at 194.

[20] Upon making S.A. a ward of the DOC, the juvenile court explained to S.A. at the hearing:

> There is no doubt that you have a lot of needs. There are a lot of reasons that you are in the situation that you are in that need to

that Mother had traumatized S.A. over and over and "the window of opportunity [for her to help S.A.] seems to have closed." *Id.* at 183.

be addressed, but in order to address those reasons effectively and keep the community safe, there has to be buy in on your part.

Extensive services have been offered in the community. You've been placed in two separate residential placements and both times the placement has asked that you be removed because of violence. There was allegedly a violent incident in JDC. That violence demands that you be in a more restrictive placement in order to keep you safe and others safe from you. The only more restrictive option is the [DOC].

*Id*. at 194-95. S.A. now appeals.

## Discussion & Decision

In addressing S.A.'s claim that the juvenile court abused its discretion in granting wardship of him to the DOC, we observe that the choice of the specific disposition of a juvenile adjudicated a delinquent child will only be reversed if the juvenile court abuses its discretion. *M.C. v. State*, 134 N.E.3d 453, 458 (Ind. Ct. App. 2019), *trans. denied*.

> The juvenile court's discretion is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least harsh disposition. An abuse of discretion occurs when the juvenile court's action is clearly erroneous and against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual inferences that can be drawn therefrom. The juvenile court is accorded wide latitude and great flexibility in its dealings with juveniles.

*Id*. (citations omitted).

Ind. Code § 31-37-18-6 provides:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
> > (A) in the least restrictive (most family like) and most appropriate setting available; and
> >
> > (B) close to the parents' home, consistent with the best interest and special needs of the child;
>
> (2) least interferes with family autonomy;
>
> (3) is least disruptive of family life;
>
> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and
>
> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

"Although the statute requires the juvenile court to select the least restrictive placement, it allows for a more restrictive placement under certain circumstances." *M.C.*, 134 N.E.3d at 459. That is, the placement option selected must be consistent with the safety of the community and the best interest of the child. *Id.*; *R.H. v. State*, 937 N.E.2d 386, 386-87 (Ind. Ct. App. 2010) ("Although juvenile courts have a variety of placement options …, [the statute] imposes one important restriction, namely, that a juvenile court select the least restrictive placement that is 'consistent with the safety of the community and the best interest of the child.'"). "Thus, the statute recognizes

that in certain situations the best interest of the child is better served by a more restrictive placement because 'commitment to a public institution is in the best interest of the juvenile and society.'" *M.C.*, 134 N.E.3d at 459 (quoting *D.S. v. State*, 829 N.E.2d 1081, 1085 (Ind. Ct. App. 2005)).

[23] Here, S.A. argues that his rehabilitation – which is always the goal in juvenile delinquency cases[3] – was cut short when the juvenile court decided to send him to the DOC. Additionally, he claims that the juvenile court failed to consider alternative, less-restrictive placements and ignored testimony that placement in the DOC would not be in his best interests. Finally, S.A. points to Mother's role in his behavior issues.

[24] This is a terribly sad case, as recognized throughout the hearings stretching back to May 2018 when S.A. was barely thirteen years old. S.A. has suffered trauma and has lacked Mother's support, which he so desperately needs. The juvenile court, counsel, CASA, probation, and service providers have made great efforts to help remedy his behaviors and encourage (even compel) Mother's involvement in his rehabilitation. The hard fact, however, is that Mother may continue to fail S.A., but he must find a way to push on and overcome his anger and behavioral issues.

---

[3] "The nature of the juvenile process is rehabilitation and aid to the juvenile to direct his behavior so that he will not later become a criminal." *Jordan v. State*, 512 N.E.2d 407, 408 (Ind. 1987).

[25] In the quest for treatment and rehabilitation, the State has provided S.A. with a plethora of services and placements short of the DOC. Initially, after a brief stay at Bashor Shelter in May 2018, he was placed at home with Mother and received individual and family therapy while on probation. His violent and disruptive behaviors at school and home eventually resulted in him being placed back at Bashor Shelter in September 2018 and then into residential treatment in the Faith Unit due to escalating violence toward staff and peers. After progress during the first half of 2019, S.A.'s delinquent behavior once again ramped up, with new adjudications, attacks on staff and peers at the Faith Unit, running away twice, using drugs and having sexual intercourse with a peer, and battering police officers. S.A.'s behavior resulted in him being kicked out of the Faith Unit in October 2019 and placed in the juvenile detention center. Despite this, the court, probation, and CASA continued to seek a less restrictive placement for S.A. outside of the DOC.

[26] S.A. received a second chance at residential placement when he was accepted into ROP, but in just over a month, ROP requested his removal from the program. Then in January 2020, while waiting in the juvenile detention center as probation investigated possible placements, S.A. was involved in a massive fight that put the safety of peers and staff at risk.

[27] At the last hearing on January 8, 2020, Macon testified that due to S.A.'s "extremely worrisome" physical aggression and his unsuccessful completion of two residential treatment programs, she recommended that he be placed with the DOC where he could continue to receive treatment in a secure setting.

*Transcript* at 188. Neither CASA nor S.A. objected at this time to such placement, essentially accepting that that was where he needed to be.

[28] Under the circumstances, we cannot say that the juvenile court abused its discretion when it determined that S.A.'s ongoing violent behavior necessitated his placement with the DOC in order to keep S.A. and the community safe. *See M.C.*, 134 N.E.3d at 459 (affirming commitment to the DOC where "many less restrictive rehabilitative efforts" failed and juvenile continued to commit additional offenses, use marijuana, and be suspended from school after involvement with the juvenile justice system); *R.H.*, 937 N.E.2d at 387 ("R.H.'s placement with the DOC is justified by the two instant adjudications, his behavior while in detention and on electronic monitoring, his pattern of inappropriate sexual conduct, and his family's inability or refusal to address his inappropriate sexual conduct[.]").

[29] Judgment affirmed.

Riley, J. and May, J., concur.