## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 20 2020, 9:00 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ana M. Quirk
Muncie, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Steven Hosler
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

H.B.,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

October 20, 2020

Court of Appeals Case No.
20A-JV-755

Appeal from the Delaware Circuit Court

The Honorable Kimberly Dowling, Judge

The Honorable Amanda Yonally, Magistrate

Trial Court Cause No.
18C02-1910-JD-86

**Tavitas, Judge.**

## Case Summary

H.B. appeals from the juvenile court's modification of its dispositional order committing H.B. to the Department of Correction ("DOC"). We affirm.

## Issue

The sole issue on appeal is whether the juvenile court abused its discretion when it committed H.B. to the DOC.

## Facts

On October 19, 2019, H.B.—then fifteen-years-old—was apprehended after he attempted to steal several bottles of liquor from a Muncie area Target store. That act, if attempted by an adult, would constitute theft, a Class A misdemeanor. *See* Ind. Code § 35-43-4-2(a). H.B. was on probation at the time of the attempted theft, having previously left home without parental permission on multiple occasions and having committed multiple delinquent acts, including both theft and criminal mischief.[1] On October 22, 2019, the juvenile court placed H.B. on informal house arrest.

On November 9, 2019, the State filed a delinquency petition. After an initial hearing, the juvenile court entered an order on November 12, 2019, granting authorization to file the State's delinquency petition. On November 22, 2019,

---

[1] After a dispositional hearing on September 11, 2019, relating to a delinquent act of theft, H.B. was placed on formal supervision for a period of six months and given a suspended commitment to the Delaware County Juvenile Detention Center.

H.B.'s parents filed a missing persons report for H.B. with the Yorktown Police Department. On November 23, 2019, H.B. was apprehended by the Muncie Police Department and placed in the Delaware County Juvenile Detention Center.

[5] At a dispositional hearing on December 4, 2019, the juvenile court warned H.B. that, "due to his recent history of repeated delinquent behaviors and non-compliance with disposition or further delinquency allegations would carry serious consequences, which may include a commitment to the Indiana Department of Correction." Appellant's App. Vol. II p. 183. The juvenile court entered a dispositional order on December 9, 2019, adjudicating H.B. delinquent. The juvenile court deviated from the predispositional recommendation of residential treatment and ordered continued out-patient services and continued formal supervision by the probation department.

[6] On January 29, 2020, H.B. admitted to his probation officer that H.B. had attempted to sell marijuana in an attempt to assist with his mother's moving expenses. H.B. also revealed that he had been self-harming and "that he'd rather be dead than go back to detention." *Id*. at 65. Shortly thereafter, H.B. was admitted to the hospital for psychiatric testing after expressing suicidal thoughts.

[7] On February 4, 2020, the State filed a petition for emergency change of custody from H.B.'s home to Emergency Shelter Care at the Youth Opportunity Center ("YOC"), citing H.B.'s admission that he attempted to sell marijuana. After a

review hearing the following day, the juvenile court ordered H.B. to be placed at the YOC and set the matter for a modification hearing. Prior to that hearing, however, due to H.B.'s behavior at the YOC, the State filed another petition for emergency change of custody, which was granted on February 27, 2020. At that time, H.B. was returned to the Delaware County Juvenile Detention Center because of:

> non-compliant behavior, including threatening staff and peers, threatening to shoot a staff member with a gun, running from the cottage, initiating and/or engaging in physical altercations with peers, refusing to follow directions, excessive cursing and substantially disrespectful behavior toward staff and peers, intentionally creating a disruptive and chaotic environment, and attempting to create a riotous situation. Additionally, [H.B.] obtained marijuana from another resident and, when prompted to give the marijuana to staff, [H.B.] then ate the marijuana.

Appellant's App. Vol. II p. 183.

[8] A psychological evaluation at the YOC disclosed that H.B.'s cognitive abilities fall in the "Extremely Low" range. *Id.* at 155. H.B. battles impulsivity and has been diagnosed with both severe near-sightedness and attention deficit hyperactivity disorder ("ADHD"). During his commitment at the psychiatric unit, H.B. was prescribed Lexapro, which is used to treat depression, as well as Intuiv, which is used to treat ADHD. H.B has reported suicidal thoughts, feelings of depression, and difficulties sleeping at night. While at the YOC, H.B. was diagnosed with adjustment disorder, as well as oppositional defiance disorder, and unspecified depressive disorder.

[9] The predispositional report indicated that, according to H.B.'s school, H.B. is "chronically defiant, chronically disruptive, chronically tardy [ ], chronically argumentative, and refuses simple directions and simple redirection requests. [H.B.] is again escalating his misbehavior and repeatedly reiterating his refusal to work and repeated statements regarding desire to get sent out of school." Appellant's App. p. 52. At least one school incident report reflects that H.B. "smacked" a girl "in the face." *Id*. at 89. Additionally, the predispositional report indicated that H.B. regularly consumes tobacco, marijuana, and alcohol.

[10] At the subsequent modification hearing in March 2020, H.B.'s probation officer indicated to the juvenile court that the probation department believed placement with the DOC was too restrictive as a disposition. Probation recommended continued placement with the YOC (albeit as part of a different program), despite H.B.'s removal from the YOC for being a danger to the staff. At the hearing, the State raised no objection to the probation department's recommendation.

[11] The juvenile court expressed disbelief at the number of incident reports generated by H.B.'s conduct while at the YOC. There were at least thirteen incidents, including incidents related to marijuana and "making physical contact with female peers." Tr. Vol. II p. 14. The juvenile court stated that H.B. "was one of the most disruptive and non-compliant juveniles that I have experienced in emergency shelter care. I cannot remember the last time, in such a short period of time that a juvenile accrued thirteen incident reports." *Id*. at 16. The juvenile court stated that H.B. already had the opportunity to

"participate in [ ] multiple modes of rehabilitative [ ] efforts by this Court including electronic home detention, formal supervision with juvenile probation, services through Lifeline, a prior informal adjustment with juvenile probation, placement at the Youth Opportunity Center, [ ] and he has been placed in detention." *Id.* at 15.

The juvenile court indicated that the court previously warned H.B. that he was on his last chance, found that H.B. had "exhausted his rehabilitative efforts [ ] and options," and granted custody to the DOC.[2] *Id.* at 17. As H.B. was leaving the court room, he was heard to say, "F*** this court." *Id.* at 18. The trial court re-opened the record to reiterate: "That absolutely affirms to me that my decision was correct. The lack of respect that is shown by [H.B.] on a repeated basis to everybody around him. There is no doubt in my mind that a commitment to the [DOC] is an appropriate commitment for you[.]" *Id.* at 18-19. H.B. now appeals.

## Analysis

H.B. argues that the juvenile court abused its discretion in ordering him committed to the DOC. A juvenile court is accorded "wide latitude" and "great flexibility" in its dealings with juveniles. *J.T. v. State*, 111 N.E.3d 1019, 1026 (Ind. Ct. App. 2018) (quoting *J.S. v. State*, 881 N.E.2d 26, 28 (Ind. Ct. App. 2008)), *trans denied*. "[T]he choice of a specific disposition of a juvenile

---

[2] The order was signed on March 6, 2020. Appellant's App. Vol II. p. 11.

adjudicated a delinquent child is a matter within the sound discretion of the juvenile court and will only be reversed if there has been an abuse of that discretion." *Id.* The juvenile court's discretion in determining a disposition is subject to the statutory considerations of the welfare of the child, the safety of the community, and the policy of favoring the least-harsh disposition. *Id.* An abuse of discretion occurs when the juvenile court's action is "against the logic and effect of the facts and circumstances before it." *Id.*

[14] The goal of the juvenile process is rehabilitation, not punishment. *R.H. v. State*, 937 N.E.2d 386, 388 (Ind. Ct. App. 2010) (citing *Jordan v. State*, 512 N.E.2d 407, 408 (Ind. 1987)). "Accordingly, juvenile courts have a variety of placement options for juveniles with delinquency problems, none of which are considered sentences." *Id.* Indiana Code Section 31-37-18-6 sets forth the following factors that a juvenile court must consider when entering a dispositional decree:

> If consistent with the safety of the community and the best interest of the child, the juvenile court shall enter a dispositional decree that:
>
> (1) is:
>
>> (A) in the least restrictive (most family like) and most appropriate setting available; and
>>
>> (B) close to the parents' home, consistent with the best interest and special needs of the child;

> (2) least interferes with family autonomy;

> (3) is least disruptive of family life;

> (4) imposes the least restraint on the freedom of the child and the child's parent, guardian, or custodian; and

> (5) provides a reasonable opportunity for participation by the child's parent, guardian, or custodian.

[15] The statute "contains language that reveals that a more restrictive placement might be appropriate under certain circumstances." *J.S.*, 881 N.E.2d at 29. The law requires only that the disposition selected be the least restrictive disposition that is "consistent with the safety of the community and the best interest of the child." *D.S. v. State*, 829 N.E.2d 1081, 1085 (Ind. Ct. App. 2005).

[16] We are mindful of H.B's struggles with mental health and troubled by his apparent preoccupations with self-harm. We note that his psychological evaluation indicates that H.B. "is motivated for treatment and has indicated a desire to engage in counseling." Appellant's App. Vol. II p. 171. Similarly, we recognize that both the State and the probation officer in this case recommended (or at the very least did not object to) a less-restrictive placement than was eventually ordered. Nevertheless, the juvenile court was not bound to accept those recommendations. The modification order clearly and explicitly establishes that the juvenile court gave due consideration to the statutory factors and exercised its discretion to order one of a range of dispositions.

Given H.B.'s continued repeated delinquent actions and numerous violations of the terms of his supervised probation in less-restrictive placements, we cannot say that the juvenile court abused its discretion here. The record reveals that attempts by the juvenile court, probation officials, YOC staff, and school officials to rehabilitate H.B. in less-restrictive placements all failed. As the trial court indicated, while placed with the DOC, H.B. "will have an opportunity for mental health treatment[,] . . . [to] think differently, and not continue to engage in delinquent behavior[.]" Tr. Vol. II p. 17. The juvenile court did not abuse its discretion when it ordered H.B. to be committed to the DOC.

## Conclusion

The juvenile court did not abuse it discretion when it ordered H.B. to be committed to the DOC. We affirm.

Affirmed.

Kirsch, J., and Pyle, J., concur.